CV-08 2497

FILED
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N.Y

★  JUN 23 2008  ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CAROLYN TULLY-BOONE,

              Plaintiff,

-against-

NORTH SHORE-LONG ISLAND JEWISH HOSPITAL
SYSTEM, GLEN COVE HOSPITAL, BARBARA
BACKUS, CAROLYN MUELLER, and GLORIA COHEN,

              Defendants.
-----------------------------------------------------------------X

COMPLAINT

Jury Trial Demanded

SPATT, J.

WALL, M.J.

Plaintiff, CAROLYN TULLY-BOONE, by her attorneys, Leeds Morelli & Brown, P.C., as and for her complaint against the Defendants herein, alleges, upon personal knowledge and upon information and belief as to all other matters:

**JURISDICTION AND VENUE**

1. This is a civil action brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12201 et seq.

2. This action is also brought against the Defendants for their violations of the New York Executive Law, the Human Rights Law, § 290 et seq., the Family and Medical Leave Act of 1993 ("FMLA"), the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and any other cause of action which can be inferred from the facts set forth herein.

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), and 2201. The pendent jurisdiction of the Court (28 U.S.C. § 1367) is invoked over state law causes of action.

4. Venue is proper pursuant to 28 U.S.C. § 1391.

5. All prerequisites to the institution of this action have been met. A charge of discrimination was duly filed with the EEOC and a Right to Sue letter was issued on April 2, 2008. This action is filed within 90 days thereof.

## PARTIES

6. Plaintiff, Carolyn Tully-Boone, was and still is a resident of Suffolk County.

7. Defendant, North Shore-Long Island Jewish Hospital System, ("Health System"), at all times hereinafter mentioned, maintains a primary place of business at 150 Community Drive, Great Neck, New York, 11021.

8. Defendant, Glen Cove Hospital ("Hospital") is a component of the Health System, with a primary place of business at 101 St. Andrews Lane, Glen Cove, New York 11542.

9. At all times hereinafter mentioned, defendant Barbara Backus ("Backus"), is an individual who was, and upon information and belief, currently is the Assistant Director of Quality Management. Backus aided, abetted, incited, compelled, and/or coerced the aforementioned unlawful conduct described below.

10. At all times hereinafter mentioned, defendant Carolyn Mueller ("Mueller"), is an individual who was, and upon information and belief, currently is the Director of Quality Management. Mueller aided, abetted, incited, compelled, and/or coerced the aforementioned unlawful conduct described below.

11. At all times hereinafter mentioned, defendant Gloria Cohen ("Cohen"), is an individual who was, and upon information and belief, currently is a Director of Human Resources of the Health System. Cohen aided, abetted, incited, compelled, and/or coerced the aforementioned unlawful conduct described below.

## BACKGROUND FACTS

12. Plaintiff, Carolyn Tully-Boone ("Boone"), a registered nurse with a Bachelor's degree in nursing, has been employed by North Shore Long Island Jewish Health System ("Health System") since 1981 in various staff and management nursing positions.

13. During the course of her employment, Boone performed her job duties in an exemplary manner and received numerous promotions over the years.

14. In January 2006, the Health System changed its policy regarding sick leave for nursing supervisors. As a result of an administrative error made by the Health System, Boone was required to apply for short-term disability insurance through Hartford Insurance. This application required the submission of a ten-year medical history. During this process, and the follow-up which continued through May 2007, Human Resources representatives, and others, learned that Boone had a number of serious medical conditions that caused her to be denied short-term disability insurance. This mishandling of confidential medical information, which allowed Plaintiff's medical history to become common knowledge to employees of Defendant, constitutes a HIPAA violation.

15. On or about September 11, 2006, Boone was transferred from her Nursing Supervisor position at the Health System's Home Care Network to Glen Cove Hospital ("Glen

Cove") as a Quality Management Coordinator. This was a transfer for which Boone was recruited. Upon her transfer, Boone was advised that there would be a six-month probation period which included a three-month orientation period, despite the fact that she had been an employee of Health System since 1981.

16. Shortly after her transfer, Boone experienced a number of stressful personal incidents which affected her physical and mental health. Namely, her husband abandoned her family and depleted the family resources, leaving her and her children with no money. Boone's husband also violated an order of protection. Additionally, Boone's home had been destroyed by a fire two years prior and the insurance company had recently gone bankrupt.

17. As a result of these stressful incidents, Boone suffered from mental and physical impairments which substantially limited her major life activities. Specifically, Boone was substantially limited in her cognitive functions including her ability to concentrate, focus, and interact with others. Additionally, Boone took prescription medications which had numerous side effects. Boone experienced difficultly sleeping, which affected her ability to wake up in the mornings. She also experienced extreme lethargy, drowsiness, body aches, and back pains. She was diagnosed with anxiety and depression.

18. Recognizing that her impairments affected her productivity, Boone frequently worked late to complete her work without requesting overtime pay.

19. In late September 2006, Boone informed the Assistant Director, Barbara Backus ("Backus"), and Director, Carolyn Mueller ("Mueller"), about her personal issues and informed them that Boone was under enormous stress.

20. During the week of October 23, 2006, Boone told Mueller and Backus that the stress was severely impacting her physical and mental health, she was having difficulties completing her work, and that she might need some time off from work.

21. During the weeks that followed, Mueller and Backus made numerous inquiries regarding Boone's medical conditions and the specific medications she was using.

22. On November 9, 2006, Boone and Backus had a discussion regarding Boone's timeliness. Boone explained that she was under a doctor's care for her mental condition and that the medications cause her difficultly arriving to work on time. Boone discussed the fact that she needed to be accommodated by being allowed to arrive to work late. Backus was already aware of these issues based on prior discussions. Boone's start time was changed from 8:00 a.m. to 8:30 a.m. Boone explained that she would do her best to arrive by 8:30 a.m., but that, as an accommodation, she may still need additional time. Also, Boone noted that she would work longer hours to offset any lateness and that she intended to work as late as necessary to complete her assignments.

23. On November 24, 2006, Boone received a memorandum from Backus regarding the fact that Boone arrived fifteen (15) minutes late for work that day. Boone signed the memorandum acknowledging that she received the document. Above her signature, Boone wrote that she was under a doctor's care for a health condition and her

5

medications were in transition. Additionally, other similarly situated non-disabled persons were not subject to discipline for similar lateness.

24. At the beginning of Boone's work day on or about November 29, 2006, Boone initiated a meeting with Mueller at which Backus joined. At this meeting, Boone expressed that she was suffering from a disability and she formally requested a medical leave as a reasonable accommodation. Boone also had a note from her doctor at this meeting, which Mueller and Backus would not review, despite Boone's attempt to provide them with the note. Mueller told Boone that she would follow up with Gloria Cohen (Human Resources) to determine if Boone was eligible for medical leave. Mueller told Boone she did not know if Boone was eligible for a medical leave because of her orientation status. Defendants' actions restrained and/or interfered with plaintiff's exercise of or attempt to exercise her FMLA rights.

25. On November 30, 2006, Boone received a disciplinary warning notice claiming that Boone was ten minutes late to work. Boone was summoned to a meeting with Backus and John Sendak (the Administrator of the Glen Cove Hospital). Boone again discussed her disability and her need for an accommodation to allow her to occasionally arrive late to work. Boone was advised that she would be suspended without pay on December 1, 2006 as a disciplinary action. At the conclusion of the meeting, Boone declined to sign the disciplinary warning notice until she could write her own comments. Boone provided her written comments which clearly stated that she wanted to grieve the warning, that she was experiencing health issues, and that she was waiting for Mueller to respond to her request for a medical leave.

26. On December 4, 2006, Boone received a quality management interim review from Backus extending her orientation period one week until December 18, 2006. This performance evaluation included positive feedback as well as certain alleged deficiencies.

27. During the week of December 4, 2006, Boone also initiated a follow-up meeting with Director of Human Resources for Glen Cove, Gloria Cohen ("Cohen") to discuss unresolved benefit issues and unpaid compensation. Specifically, Plaintiff complained about Defendant Health System's failure to carry over her benefits that had been received over the course of her twenty-four years of service at Defendant (i.e. sick time, vacation time, disability insurance), in violation of the Family and Medical Leave Act ("FMLA"), and Defendant's failure to process her salary increase properly. Boone also inquired about her request for medical leave. Cohen told Boone that she was not aware of the issue. Boone requested that Cohen contact Mueller about her request for a medical leave.

28. On December 18, 2006, Boone had another meeting with Cohen regarding her unresolved benefit and pay issues, as well as the suspension. Boone explained that her lateness was a result of her medical condition. Cohen became hostile and abruptly ended the meeting.

29. On December 20, 2006, Boone was terminated. Mueller and Backus presented Boone with a quality management interim review dated December 19, 2006 prepared by Backus. Boone was told that she did not pass orientation, despite the fact that she was only given two weeks since her last evaluation to correct her alleged deficiencies. In addition,

during this ten day period, Backus's ability to observe Boone's performance was limited to only seven work days.

30. The quality management interim review dated December 19, 2006 extensively detailed nine performance areas with alleged deficiencies, a number of which were not documented in the previous written evaluation or discussed with Boone. In fact, the review dated December 4, 2006 included only four performance areas with alleged deficiencies.

31. On January 24, 2007, after repeated requests to discuss her situation with Corporate Human Resources, Boone spoke with Rosemary Milano. Boone explained to Milano the issues with her termination and Mueller's and Backus' knowledge of her medical condition. Milano told Boone she was never informed of the request for a medical leave.

32. On January 31, 2007, Boone again spoke with Milano. Milano stated that Mueller, Backus and Cohen claimed that Boone had never requested a medical leave.

33. On the call with Milano on January 24, 2007, Boone was also advised of the Corporate policy/procedure which would assist her in being rehired by the Health System and that should she be hired in to a new position with in ninety (90) days of termination that Boone would retain her benefit status. During the months that followed, the Nurse Recruiters only presented Boone with the opportunity to interview for two positions. Boone was also denied the opportunity to apply for a position that the Nurse Recruiters said she was not qualified for that was ultimately given to an individual who worked for Boone at the Health System's Home Care Network.

34. By reason of the foregoing, Plaintiff suffered a loss of earnings and benefits, future earnings and benefits, emotional damages and physical damages. Plaintiff is thus entitled to all forms of applicable compensatory damages, equitable relief, and any other damages and/or remedies under state and Federal law.

## CLAIMS FOR RELIEF

35. Defendants Health System and Hospital, have subjected Plaintiff to unlawful discrimination on the basis of her disability and/or retaliation for her accommodation requests. Additionally, her requests for reasonable accommodations were not properly addressed and were improperly denied in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12201 et seq., and the New York State Executive Law, Human Rights Law § 290 et seq.

36. The individual defendants aided, abetted, incited, compelled, and/or coerced the aforementioned unlawful discrimination in violation of New York State Executive Law, Human Rights Law, §296(6).

37. All Defendants denied, restrained and/or interfered with plaintiff's exercise of or attempt to exercise her FMLA rights, and constitutes a violation of the FMLA, and defendants failed to properly inform plaintiff of her FMLA rights.

38. All Defendants conduct, with respect to its knowing, willful and wrongful disclosure of Plaintiff's health information constitutes a violation of the Health Insurance Portability and Accountability Act of 1996.

WHEREFORE, Plaintiff demands judgment against defendants for all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, reinstatement and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled. Plaintiff demands a trial by jury.

Dated: Carle Place, New York
June 18, 2008

                                        Respectfully submitted,

                                        LEEDS MORELLI & BROWN, P.C.
                                        *Attorneys for Plaintiffs*
                                        One Old Country Road, Suite 347
                                        Carle Place, New York 11514
                                        (516) 873-9550

By: _____
                                          RICK OSTROVE (RO-7248)

ORIGINAL